UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DONNA GRANT, as Executrix of
the Estate of George Grant,

NO. CIV. S-05-2389 FCD KJM

        Plaintiff,

   v.                       MEMORANDUM AND ORDER

STATE FARM LIFE INSURANCE
COMPANY,

        Defendant.

----oo0oo----

Plaintiff Donna Grant as Executrix of the Estate of George

Grant ("plaintiff" or the "Estate") brings this diversity action[1]

against defendant State Farm Life Insurance Company

("defendant"), alleging state law claims of breach of contract,

tortious breach of the implied covenant of good faith and fair

dealing ("bad faith" claim), intentional and negligent infliction

of emotional distress, and fraud and negligent

---

[1]    Plaintiff filed this action on October 11, 2005 in
Solano County Superior Court; defendant removed the action to
this court on November 28, 2005 on the basis of diversity
jurisdiction.

1  misrepresentation,[2] arising from defendant's delay in paying the

2  proceeds of George Grant's life insurance policy to the Estate.[3]

3      This matter is before the court on defendant's motion for

4  summary judgment, or alternatively, partial summary judgment.[4]

5  Plaintiff opposes the motion, arguing triable issues of fact

6  remain as to each of its claims.  For the reasons set forth

7  below, the court GRANTS defendant's motion in its entirety.

8  Plaintiff has failed to establish any cognizable damage to the

9  Estate, the sole plaintiff in this action, and thus, all of the

10  Estate's claims must fail.  Alternatively, even were the court to

11  find a triable issue with respect to plaintiff's damages,

12

13      [2]    Plaintiff also alleged as its ninth cause of action a
    claim for "coverage by estoppel," asserting that based on certain
14  representations made by defendant to plaintiff, defendant is
    precluded from denying coverage herein.  Plaintiff did not
15  respond to defendant's motion on this claim, and as such, the
    court construes plaintiff's silence as a non-opposition to the
16  motion (E.D. Cal. L.R. 78-230(c)).  The court therefore grants
    defendant's motion with respect to this claim.  Nevertheless, the
17  court notes that, on the merits, this claim would fail as it is
    undisputed that defendant did not deny coverage in this case;
18  rather, as set forth below, it has paid the policy's proceeds to
    the Estate (with the appropriate interest).
19
        [3]    Plaintiff seeks, among other relief, a declaration that
20  defendant's delay in paying benefits due under the insurance
    policy was "deliberate, intentional, and in bad faith" (Compl. at
21  ¶ 35) and attorney fees under Brandt v. Sup. Ct., 37 Cal. 3d 813
    (1985) (holding that when an insurer tortiously withholds
22  benefits, attorney fees reasonably incurred to compel payment of
    the policy benefits are recoverable as an element of the damages
23  resulting from the tortious conduct).  Plaintiff pled these
    requests for relief as separate causes of action, namely its
24  "first cause of action" for "declaratory relief" and its "fourth
    cause of action" for "Brandt fees."  (Compl. at ¶s 33-35, 46-47.)
25  However, said claims are more properly considered as part of
    plaintiff's request for relief pursuant to her causes of action
26  above, rather than as substantive claims in and of themselves.

27      [4]    Because oral argument will not be of material
    assistance, the court orders this matter submitted on the briefs.
28  E.D. Cal. L.R. 78-230(h).

1 plaintiff cannot establish a triable issue as to one or more of

2 the other requisite elements of its claims.

3                           **BACKGROUND**[5]

4      On November 18, 1994, defendant issued a life insurance

5 policy to insure the life of George Grant in the amount of

6 $250,000.00 (the "Policy").  (RUF ¶ 1.)  Mr. Grant died as a

7 result of a homicide on May 30, 2004.[6]  (RUF ¶s 3, 17.)  At the

8 time, the Policy named Mr. Grant's former business partner,

9 William D. Anderson, as the beneficiary of the Policy.  (RUF

10 ¶ 4.)  However, Mr. Anderson had died eight years earlier.  (RUF

11 ¶ 5.)  The Policy provides that if no beneficiary is living at

12 the time of the insured's death, the proceeds shall be paid,

13 pursuant to the terms of the Policy, to the estate of the

14 insured.  (RUF ¶s 4, 6, 7.)

15

16

17

18      [5]     Unless otherwise noted, the court finds the following
facts undisputed.  While plaintiff attempts to dispute some of
the facts recited below, it does so citing inadmissible or
19 immaterial evidence, and as such, the court treats the subject
fact as undisputed.  In other respects, the court finds the
20 parties' dispute with regard to a particular fact not material to
resolution of the motion, and thus, while the fact may be
21 included herein to provide context to the issues, the evidence is
not considered by the court.  (Pl.'s Reply to Def.'s Stmt. of
22 Undisputed Facts [Docket #47], filed Sept. 18, 2007 ["RUF"].)
          With its reply, defendant filed evidentiary objections
23 to plaintiff's declaration and the declaration of plaintiff's
counsel Tim Pori (Docket #50); the court declines to rule on said
24 objections because even considering the proffered evidence, it
fails to raise a triable issue of fact sufficient for plaintiff
25 to withstand summary judgment.

26      [6]     Mr. Grant was killed in the bedroom of the home he
shared with his wife, Donna Grant.  To date, no one has been
27 arrested or prosecuted for his murder.  (Def.'s Resp. to Pl.'s
Sep. Stmt. of Undisputed Facts [Docket #49], filed Sept. 24, 2007
28 ["PUF"], ¶s 3-4.)

1     Defendant was notified of George Grant's death on August 5,

2 2004.  (RUF ¶ 15.)[7]  On August 19, 2004, defendant learned that

3 Mr. Grant's will nominated Donna Grant, his wife, as the

4 executrix of his estate.  (RUF ¶ 20.)  That same day, defendant

5 informed Donna Grant's representative, John Hall, that defendant

6 could not pay the proceeds of the Policy without a court order

7 appointing a representative of the estate.  (RUF ¶s 20-21.)

8     Anticipating that Ms. Grant eventually would make a claim

9 for benefits on behalf of the estate, defendant began assembling

10 information about Mr. Grant's death.  (RUF ¶s 16, 18-19, 23-24,

11 26-27, 29-35, 37-38, 41-46, 49-50, 52-96, 98-106, 108-116, 118-

12 124, 126, 134-135.)  Among other things, defendant contacted the

13 law enforcement agency investigating Mr. Grant's death and

14 learned that Ms. Grant had not been eliminated as a suspect in

15 Mr. Grant's murder.  (RUF ¶s 23, 31, 46, 58, 71, 107, 135.)

16 Defendant also communicated with one of Mr. Grant's brothers, who

17 told defendant that he believed Ms. Grant had been involved in

18 Mr. Grant's murder, and that he did not want her to serve as

19 executrix of Mr. Grant's estate.  (RUF ¶s 75-76, 81-82.)

20     On February 9, 2005, the Solano County Superior Court

21 appointed Ms. Grant as the Executrix of the Estate of George

22 Grant.  (RUF ¶ 97.)  However, plaintiff did not inform defendant

23

24     [7]   Ms. Grant contends that on this day she made a formal
"notice of claim" to defendant to collect the proceeds of the
25 Policy.  (PUF ¶ 9.)  She maintains that defendant did not
formally acknowledge receipt of the claim until September 13,
26 2004, when defendant's claims agent told Ms. Grant that defendant
would make every effort to handle the claim for benefits in a
27 timely manner and that the claim could be processed in as little
as three weeks.  (PUF ¶ 15.)  Defendant disputes these facts.
28 However, as set forth below, the parties' dispute is not material
to resolution of the motion.

1  of Ms. Grant's appointment until April 8, 2005.  (RUF ¶ 116.)

2  Defendant thereafter, on April 14, 2005, sent plaintiff, through

3  plaintiff's attorney at the time, Kendall Hillman, a request that

4  Ms. Grant complete, sign and date an IRS Form W-9 on behalf of

5  the Estate.  (RUF ¶ 118.)  Defendant received the form from

6  plaintiff, signed by Ms. Grant on May 4, 2005, on May 9, 2005.

7  (RUF ¶s 124.)[8]

8       To process plaintiff's claim, defendant thereafter took

9  action to confirm the validity of the order appointing Ms. Grant

10  as executrix of the Estate.  (RUF ¶s 126, 134-135, 139-140.)  On

11  June 9, 2005, defendant wrote to plaintiff's attorney, Tim Pori,

12  informing him that defendant had received all necessary paperwork

13  from plaintiff for the claim but that defendant could not pay

14  benefits to Ms. Grant, either as an individual or as executrix of

15  the Estate, while she remained a suspect in the ongoing homicide

16  investigation of Mr. Grant's death; defendant indicated that once

17  the police and prosecutor either charge Ms. Grant or exonerate

18  her from being a suspect, defendant would be able to finalize the

19

20  [8]  Plaintiff asserts that from September 13, 2004 through
    May 9, 2005, defendant did not regularly communicate with her or
21  provide her a firm estimate of the amount of time needed to
    process the claim for benefits.  (PUF ¶s 17-24, 27-33, 35.)
22  Defendant, plaintiff contends, only requested documents of Ms.
    Grant, including a claimant's statement, a W-9 form and a copy of
23  the court order appointing her executrix of the Estate; plaintiff
    contends that defendant often made duplicate requests asking
24  plaintiff to complete substantially similar dcouments.  (PUF ¶
    13, 17, 27.)  Defendant disputes these facts, arguing that it
25  regularly communicated with plaintiff and that it could not
    process any claim for benefits by plaintiff until a legal
26  representative of the Estate was appointed (which did not occur
    until February 9, 2005 and which defendant was not informed of
27  until April 8, 2005).  For the reasons set forth below, the
    parties' dispute in this regard nevertheless does not preclude an
28  award of summary judgment to defendant.

1   claim.   (PUF ¶ 32.)   In response, Mr. Pori sent defendant a

2   letter on June 20, 2005, summarizing his investigation into the

3   murder of Mr. Grant, which included reports of interviews of

4   various witnesses, conducted by a private investigator Mr. Pori

5   retained.   (PUF ¶ 34.)   Ms. Grant asserted these interviews

6   confirmed that she and George Grant had a loving relationship,

7   and that she had no motive to kill her husband.   (Id.)   Defendant

8   responded to Mr. Pori's letter on June 27, 2005, informing him

9   that defendant was in the process of reviewing the documents Mr.

10  Pori submitted with his letter.   (RUF ¶ 131.)

11       On June 29, 2005, defendant was informed by the Solano

12  County Sheriff's Office that Ms. Grant had not been eliminated as

13  a suspect in the homicide of Mr. Grant.   (RUF ¶ 135.)

14  Nevertheless, defendant continued to review plaintiff's claim; on

15  August 12, 2005, Bill Dolk, of State Farm's Life General Claims

16  Department, recommended that defendant pay the proceeds to Ms.

17  Grant as Executrix of the Estate.   (RUF ¶s 136-137.)   On August

18  17, 2005, defendant telephoned the Solano County Sheriff's

19  Department and Mr. Grant's brother to inform them that defendant

20  was getting ready to pay the proceeds of the Policy to the

21  Estate.   (RUF ¶s 139-140.)   Defendant informed Mr. Pori of the

22  same on August 17, 2005.   (RUF ¶ 141.)

23       On August 18, 2005, defendant paid the proceeds of the

24  Policy, plus applicable interest, to plaintiff in the amount of

25  $260,825.72.[9]   (RUF ¶s 142, 143.)

26

27  _____

28       [9]   The check was made payable to "Donna Grant, as
    Executrix of the Estate of George Grant."   (RUF ¶ 142.)

1    Ms. Grant contends that in reliance on representations made

2  by defendant in September 2004 regarding the prompt payment of

3  the Policy proceeds (see n. 7 supra), she decided to continue to

4  run the family business and to sell the family home; she asserts

5  that these decisions ultimately resulted in financial losses to

6  her and/or the Grant Family Trust as a result of defendant's

7  delay in payment of the proceeds.  (PUF ¶s 16, 26, 39.)  For

8  example, Ms. Grant declares that she decided to sell the home

9  where Mr. Grant was murdered and move back to a previous home she

10 had lived in with Mr. Grant; while that previous home was more

11 expensive than she could afford based on the income from the

12 Grant Family Trust, she believed with the proceeds from the

13 Policy she could afford to live in that home with her daughter.

14 (Pl.'s Decl., filed Sept. 7, 2007, ¶ 34.)  Ms. Grant contends

15 that defendant's delay in paying the Policy proceeds caused her

16 to lose $50,000.00 in conjunction with the home sell and

17 purchase.  (Id.)  Ms. Grant also maintains that she believed the

18 prompt receipt of the Policy proceeds would enable her to

19 continue to operate her husband's glass business.  (Id. at ¶ 35.)

20                              **STANDARD**

21    The Federal Rules of Civil Procedure provide for summary

22 judgment where "the pleadings, depositions, answers to

23 interrogatories, and admissions on file, together with the

24 affidavits, if any, show that there is no genuine issue as to any

25 material fact."  Fed. R. Civ. P. 56(c); see California v.

26 Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  The evidence must

27 be viewed in the light most favorable to the nonmoving party.

28

                                  7

1  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en
2  banc).

3      The moving party bears the initial burden of demonstrating
4  the absence of a genuine issue of fact.  See Celotex Corp. v.
5  Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to
6  meet this burden, "the nonmoving party has no obligation to
7  produce anything, even if the nonmoving party would have the
8  ultimate burden of persuasion at trial."  Nissan Fire & Marine
9  Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).
10 However, if the nonmoving party has the burden of proof at trial,
11 the moving party only needs to show "that there is an absence of
12 evidence to support the nonmoving party's case."  Celotex Corp.,
13 477 U.S. at 325.

14     Once the moving party has met its burden of proof, the
15 nonmoving party must produce evidence on which a reasonable trier
16 of fact could find in its favor viewing the record as a whole in
17 light of the evidentiary burden the law places on that party.
18 See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th
19 Cir. 1995).  The nonmoving party cannot simply rest on its
20 allegations without any significant probative evidence tending to
21 support the complaint.  See Nissan Fire & Marine, 210 F.3d at
22 1107.  Instead, through admissible evidence the nonmoving party
23 "must set forth specific facts showing that there is a genuine
24 issue for trial."  Fed. R. Civ. P. 56(e).

**ANALYSIS**

**1.   Standing**

27     Before the court addresses plaintiff's claims for relief, it
28 must preliminarily resolve the parties' dispute over whether Ms.

1   Grant has standing in her individual capacity to bring the
2   instant claims against defendant.  Resolution of this question is
3   critical to the motion, as the issue of damages to the Estate
4   versus Ms. Grant, individually, is ultimately determinative of
5   the motion.

6       Only parties in privity of contract have standing to sue
7   under a contract.  Gruenberg v. Aetna Insur. Co., 9 Cal. 3d 566,
8   576-78 (1973).  Accordingly, only insureds and their
9   beneficiaries have standing to sue for damages resulting from an
10  insurer's withholding of policy benefits from an insured.
11  Austero v. Nat'l Casualty Co., 62 Cal. App. 3d 511, 515-16 (1978)
12  (*citing* Gruenberg, 9 Cal. 3d at 576-78); Seretti v. Superior
13  Nat'l Insur. Co., 71 Cal. App. 4th 920, 929 (1999) (holding that
14  non-parties to the contract lack standing to enforce the implied
15  covenant of good faith and fair dealing or to recover extra-
16  contractual damages for its breach).

17      Here, defendant issued the Policy to Mr. Grant, and Mr.
18  Grant named William Anderson, his business partner, as the
19  beneficiary of his coverage.  (RUF ¶s 1, 4.)  Because Mr.
20  Anderson predeceased Mr. Grant, the terms of the Policy directed
21  that the proceeds be paid to Mr. Grant's estate.  (RUF ¶s 1, 4.)
22  Thus, the only party with standing to sue for damages under the
23  Policy is Mr. Grant's estate.  Id.

24      Plaintiff argues, nonetheless, that as a beneficiary of Mr.
25  Grant's estate, she has standing to sue in her individual
26  capacity.  Plaintiff contends: "By virtue of the Last Will and
27  Testament of George Grant, the only named beneficiaries who would
28  inherit the proceeds of the [Policy] [are] Donna Grant and her

1  daughter, Nicole Grant." (Opp'n, filed Sept. 9, 2007, 1:27-2:1.)

2  However, the documentary evidence submitted by plaintiff in

3  opposition to the motion proves otherwise.  Specifically, Mr.

4  Grant's will directs that his son receive a specific automobile

5  and that Ms. Grant receive any "remaining tangible personal

6  property." (Grant Decl., filed Sept. 9, 2007, Ex. 4 [§ 2.1].)

7  The proceeds of the subject Policy are not such "tangible

8  property." See e.g. Fairbanks v. Sup. Ct., 154 Cal. App. 4th

9  435, 442-43 (2007) (explaining that insurance is not a tangible

10  item).  Instead, the Policy proceeds pass via the residuary

11  provision of Mr. Grant's will which directs that the proceeds of

12  the Policy be added to the principal of the Grant Revocable

13  Family Trust and distributed "in accordance with the provisions

14  of that declaration of trust." (Grant Decl., Ex. 4 [§ 3.1].)

15  Thus, it is only the Grant Revocable Family Trust that could

16  legitimately claim "beneficiary" status under the Policy.  The

17  Trust, however, *is not* a named party to this action.

18      Moreover, while Ms. Grant *claims* she is a beneficiary of the

19  Grant Revocable Family Trust, she has not offered any competent

20  evidence to support that claim.  Indeed, plaintiff has not

21  produced the trust documents; instead, she simply asserts in her

22  declaration that she and her daughter "were the sole named

23  beneficiaries of all of the residual assets of the estate of

24  George Grant." (Grant Decl., ¶ 26.)  Plaintiff's unsubstantiated

25  assertion is insufficient to raise a triable issue of fact as to

26  her individual standing to sue under the Policy.

27      Even if plaintiff had proffered sufficient evidence of her

28  status as a beneficiary of the Trust, that status is too remote

10

1  to grant her standing to sue for the Policy proceeds.  As set

2  forth above, only parties to the insurance contract or named

3  beneficiaries have standing to enforce the contract or to recover

4  extra-contractual damages for wrongful withholding of benefits.

5  See e.g. Hatchwell v. Blue Shield of Cal., 198 Cal. App. 3d 1027,

6  1034 (1998).  Courts have thus recognized that "incidental

7  beneficiaries" do not have standing to sue under an insurance

8  contract.  See e.g. Jones v. Aetna Cas. & Surety Co., 26 Cal.

9  App. 4th 1717, 1725 (1994) (fact that lessee "would have received

10  some benefit in the event Aetna indemnified the lessor . . . only

11  makes him an incidental beneficiary under the policy," lacking

12  standing to sue); Gantman v. United Pacific Insur. Co., 232 Cal.

13  App. 3d 1560, 1568 (1991) ("although [homeowners] stand to gain

14  when Association gains, the benefits [they] seek belong to the

15  Association by the insurance contracts sued upon . . . [the

16  homeowners] are simply not claimants whose benefits were

17  wrongfully withheld.")

18       In a final attempt to establish standing in her individual

19  capacity, Ms. Grant argues that California courts have recognized

20  a spouse's standing to sue under an insurance contract, if the

21  insurance premiums were paid with community property assets.

22  (Opp'n at 5:6-9.)  The lone case cited by Ms. Grant, however,

23  actually establishes *the contrary*.  In Seretti, the California

24  court of appeal held that an insured's spouse is at most "an

25  incidental or remote beneficiary and, as such, *can state no cause*

26  *of action* against [the insurer] for breach of a duty, express or

27  implied, arising from the contractual relationship."  Seretti, 71

28  Cal. App. 4th at 929-30 (emphasis added).  Moreover, even if case

1   law supported Ms. Grant's argument, she offers no evidence that

2   any of the premiums for the subject Policy were paid with

3   community property assets.  Thus, the factual premise for Ms.

4   Grant's assertion is wholly unsupported.

5       Finally, while Ms. Grant *could* have certain rights to the

6   Policy proceeds *if* Mr. Grant used community property assets to

7   pay the premiums for the Policy, those rights would not include a

8   claim against defendant.  Rather, Ms. Grant would simply be a

9   creditor of Mr. Grant's estate and could pursue a claim against

10  Mr. Grant's estate; this fact does not, however, provide her

11  standing to bring a claim against *defendant*.  See Cal. Fam. Code

12  § 1100(a); see Burch v. George, 7 Cal. 4th 246, 264, 285 (1994).

13      Thus, for all these reasons, only the Estate, through its

14  Executrix Ms. Grant, has standing to pursue the instant claims

15  against defendant.

16          **2.   Damages to the Estate**

17      Defendant moves for summary judgment as to each of

18  plaintiff's claims arguing the Estate, the sole plaintiff in this

19  action as set forth above, has not suffered any damage, and thus,

20  each of its claims must fail.  Defendant is correct that absent

21  evidence of damage to plaintiff as a result of defendant's delay

22  in payment of the Policy proceeds, plaintiff does not have a

23  cognizable claim against defendant, and defendant is entitled to

24  summary judgment.  The court thus considers the issue of damages

25  in the first instance as it obviates the need for a full analysis

26  of the other elements of plaintiff's claims.

27      It should be noted at the outset that this case involves a

28  *delay* in payment of policy proceeds (for at most, approximately

12

1   4½ months),[10] not a *denial* of payment.  At times, plaintiff cites

2   cases involving denial of coverage or payments; that situation is

3   clearly not present here.  It is undisputed that defendant has

4   paid the Policy proceeds, with applicable interest, to plaintiff

5   in the amount of $260,825.72.  (RUF ¶s 142, 143.)  Thus, for

6   plaintiff to establish damages, at all, the Estate must tie its

7   purported damages to the *delay* in payment by defendant.

8        In support of its motion, defendant proffers evidence of its

9   payment of the Policy proceeds to the Estate and evidence that

10  the value of the Estate did not change between the date of Mr.

11  Grant's death and the date on which defendant paid the proceeds,

12  with interest.  (RUF ¶s 142, 143; Pohls Decl., Ex. 7 [Grant Dep.

13  106:5-18 and Ex. 19].)  Plaintiff does not dispute these facts.

14  (RUF ¶ 10, 14.)[11]  Instead, plaintiff asserts in its opposition

15  that:

16       [T]he *Grant Family Estate* [sic][12] suffered a loss of
         earnings, various special damages, the costs of attorney
17

18

19       [10]   Defendant may only properly be charged with any delay
    from the time it received notice of Ms. Grant's appointment as
20  Executrix of the Estate, April 8, 2005, to the date it paid the
    policy proceeds, August 18, 2005.  Prior to April 8, 2005,
21  defendant had no obligation to process a claim for the Policy
    proceeds pursuant to the express terms of the Policy. (RUF ¶s 4,
22  6, 7, 20-21.)

23       [11]   Plaintiff "denied" this latter fact in its response to
    defendant's statement of undisputed facts (RUF ¶ 14) but it cited
24  no contrary evidence and, indeed, also conceded that the Estate
    was affected if, at all, only positively in that the Policy
25  proceeds ultimately "increased" the value of the Estate.
    Plaintiff's response does not raise a triable issue of fact that
26  the Estate was harmed in any way by the delay in payment of the
    proceeds.
27
         [12]   Since there is no entity known as the "Grant Family
28  Estate," the court assumes plaintiff is referring to the Grant
    Revocable Family Trust mentioned in Mr. Grant's will.

                                13

fees and *Ms. Grant herself* suffered severe emotional upset and distress. [citing PUF ¶s 16, 26, 37, 39.]

(Opp'n at 15:18-21.) (Emphasis added.)  However, as set forth above, only *the Estate* may assert the instant claims against defendant; any damage to the Grant Revocable Family Trust, a non-party to the action, or Ms. Grant individually, or even ostensibly as the legal representative of the Trust, is irrelevant.

Plaintiff does not offer any evidence to rebut defendant's showing that (1) the Estate was not harmed in any way as the Policy proceeds were paid to the Estate with the appropriate interest and (2) any delay in payment of the Policy proceeds, even assuming such delay was "unreasonable,"[13] did not cause any cognizable harm to the value of the Estate.  Therefore, defendant is entitled to judgment as a matter of law as to each of plaintiff's claims.

### 3. **Plaintiff's Claims for Relief**

While not necessary to resolution of the motion in light of the above findings, the court nonetheless briefly discusses below its findings regarding other elements of plaintiff's claims. There are further, alternative reasons to grant defendant's motion.

Regarding plaintiff's breach of contract and bad faith claims, plaintiff argues defendant unreasonably delayed paying the Policy proceeds for over a year.  Plaintiff maintains said

---

[13]     To prevail on a claim for breach of the implied covenant of good faith and fair dealing, plaintiff must prove that defendant withheld a benefit that was payable under the policy, unreasonably and without proper cause.  See e.g. Gruenberg, 9 Cal. 3d at 575.

14

1    monies were due upon "proof of the Insured's death" which

2    defendant received in August 2004.  (Opp'n at 6:17.)  Plaintiff's

3    argument wholly ignores the other terms of the Policy, providing

4    that the *Estate* is the applicable beneficiary and requiring

5    appointment of a representative for the Estate in order to make a

6    claim to the Policy proceeds.  (RUF ¶s 4, 6, 7, 20-21.)  Any

7    obligation of defendant to "process" plaintiff's claim for

8    benefits did not arise, as set forth above, until April 8, 2005,

9    when defendant received copies of the letters of administration

10   identifying Ms. Grant as the Executrix of the Estate.  See e.g.

11   10 C.C.R. § 2695.5(e).  Thus, any delay at issue is from April 8

12   to August 18, 2005, the date defendant paid the Policy proceeds

13   plus applicable interest.

14        As to that specific time frame,[14] plaintiff fails to proffer

15   any evidence from which a jury could find unreasonable

16   withholding of benefits.  To the contrary, defendant submits

17   evidence that during this time, it investigated, in light of Ms.

18   Grant's suspected role in Mr. Grant's death,[15] the validity of

19   the order appointing her Executrix.  (RUF ¶s 126, 134-135, 139-

20   140.)  This investigation included making contact with

21   plaintiff's counsel, the Solano County Sheriff's Department and

22   defendant's own legal department; defendant consulted its legal

23   department specifically for an opinion as to the effect, if any,

24

25        [14]    Both parties spend a large portion of their briefing
     discussing conduct by Ms. Grant and defendant prior to April 8,
26   2005.  However, this conduct is irrelevant to the instant motion
     as the period of any delay with which defendant may be charged
27   occurred between April 8 and August 18, 2005.

28        [15]    Defendant preliminarily began this investigation in
     late-2004.

1  that Ms. Grant's possible involvement in Mr. Grant's homicide

2  would have on her authority to act as the legal representative of

3  his estate.  (RUF ¶s 131, 135; PUF ¶s 32, 34.)  These contacts

4  occurred in May and June 2005.  Defendant's legal department

5  responded to the last inquiry, made on June 28, 2005, on August

6  8, 2005.  On August 12, 2005, Bill Dolk of defendant's General

7  Claims Department recommended payment of the proceeds to Ms.

8  Grant as Executrix of the Estate; the monies were thereafter paid

9  on August 18, 2005.  (RUF ¶s 136-137, 142-143.)

10      The only evidence plaintiff submits is its counsel's letter

11  of June 20, 2005 to defendant, informing defendant of plaintiff's

12  counsel's investigation into Mr. Grant's murder (which

13  plaintiff's counsel asserted established that Ms. Grant was not

14  involved).  (PUF ¶ 34.)  Defendant, however, promptly responded

15  to this letter on June 27, 2005.  (RUF ¶ 131.)  Defendant

16  continued investigating the situation in July and early-August

17  2005, and ultimately paid the proceeds less than two months after

18  plaintiff's counsel's June 20 letter.

19      Under these facts, no reasonable juror could find that

20  defendant withheld benefits payable under the Policy

21  "unreasonably and without proper cause."  Gruenberg, 9 Cal. 3d at

22  575; see also Fraley v. Allstate Insur. Co., 81 Cal. App. 4th

23  1282 (2000) (summary judgment proper when payment delayed to

24  investigate genuine issue regarding coverage); see Lunsford v.

25  American Guarantee & Liability Insur. Co., 18 F.3d 653, 656 (9th

26  Cir. 1994) ("[a] court can conclude as a matter of law that an

27  insurer's denial of a claim is not unreasonable, so long as there

28  existed a genuine issue as to the insurer's liability").

1    Because plaintiff cannot sustain its bad faith claim, it

2  likewise cannot maintain a claim for attorney fees and costs

3  pursuant to <u>Brandt</u>.   37 Cal. 3d at 813 (a viable bad faith claim

4  is a prerequisite to seeking fees and costs based thereupon).

5    As to plaintiff's intentional and negligent infliction of

6  emotional distress claims, these claims fail since the Estate, as

7  a legal entity, cannot suffer emotional distress.   <u>See e.g.</u>

8  <u>Diamond View Limited v. Herz</u>, 180 Cal. App. 3d 612, 618-19 (1986)

9  (emotional states are exhibited by natural persons, not legal

10  entities).   Because the Estate cannot establish this requisite

11  element of its claims, that it suffered "severe emotional

12  distress,"[16] defendant's motion on these claims is properly

13  granted on this alternative basis.

14    Finally, as to plaintiff's fraud and negligent

15  misrepresentation claims, both claims require proof that the

16  *Estate* relied on certain, specific representations by defendant

17  regarding the payment of the Policy proceeds.   Fed. R. Civ. P.

18  9(b).   However, plaintiff proffers no evidence of the *Estate's*

19  reliance on any representations by defendant.   At most, plaintiff

20  offers evidence of *Ms. Grant's* reliance on a purported

21  representation by defendant on September 13, 2004, indicating,

22  Ms. Grant contends, that defendant would promptly pay the Policy

23  proceeds within as little as three weeks.   (<u>See</u> n. 7 <u>supra</u>.)

24  Even assuming defendant made this representation (which defendant

25

26    [16]    <u>Michaelian v. State Compenstation Insur. Fund</u>, 50 Cal.
App. 4th 1093, 1113-14 (1996) (setting forth elements of claim
27  for intentional infliction of emotional distress); <u>Bogard v.</u>
<u>Employers Casualty Co.</u>, 164 Cal. App. 3d 602, 618 (1985) (setting
28  forth elements of claim for negligent infliction of emotional
distress).

17

disputes and offers evidence to the contrary [see Reply, filed

Sept. 24, 2007, at 12]), plaintiff only proffers evidence that

Ms. Grant relied on the representation not the Estate.  Indeed,

at that time, no representative of the Estate had been appointed;

Ms. Grant was not authorized to act on behalf of the Estate until

February 9, 2005.  Plaintiff fails to identify any

misrepresentation by defendant after that date, upon which the

Estate relied to its detriment, and thus, defendant's motion as

to these claims is also properly granted for this further reason.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary

judgment is GRANTED in its entirety.  The Clerk of the Court is

directed to close this file.

IT IS SO ORDERED.

DATED: October 23, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

18